Good morning. There is one case remaining on the calendar, and that is Kenna v. U.S. District Court, and I see that, Mr. Twist, you are here representing the petitioner, and we have a representative of the United States. Mr. Undersecretary, we don't have an argument, but I'll be here in case the court has any questions. You don't have a dog in the fight, so to speak. If the court has any factual questions. Why don't you sit at the council table anyway? We might have some questions. I gather there is no one here representing the district court, and there is also no one here representing the defendant in the underlying case. Okay. That should make it interesting. Not often you get to feel pretty much all to yourself, Mr. Twist. I was wondering, Your Honor, if I should maybe sit on this side first and then sit on that side. Sometimes it's good to have an opponent. You know, when you don't have an opponent, sometimes we feel like we have to be the opponent. That thought crossed my mind, Your Honor. You may proceed. May it please the court. My name is Steve Twist. I am counsel for the petitioner, Patrick Kenna, who is present in court today, as he was on May 23rd, 2005, when the respondent held a sentencing proceeding, a sentencing proceeding in which the record makes clear beyond any doubt that speaking mattered. During the course of that proceeding, the respondent turned to the defendants' counsel after hearing from the defendants' counsel and said, quote, does your client wish to be heard? Next he turns to the prosecutor, Mr. Kramer, and he said, does the government ---- Well, the court were required to say that. If the court doesn't say those words, I mean, let's say the district judge wants to hear from no one less than the defendant, which sometimes happens. You know, you're probably the last person you want to hear from as a defendant. Well, indeed, Your Honor ---- But if you don't say the magic words and if you don't give the defendant a chance to speak, then your sentence gets overturned on appeal by those pointy-headed court of appeals judges who insist on such things. So indeed, Your Honor, this Court has done in the case of Navarro, for example, when the defendant didn't ---- wasn't given an opportunity to speak at sentencing, the proper remedy was to remand the case for a resentencing. That's the proper remedy in this case because there are new magic words. It's quite clear that elocution for a defendant means actually speaking in person. It's not so clear as to victims, right? I think it is as clear, Your Honor. It's as clear as the Respondent Court's own use of the word to be heard. When he invited the defendant to be heard, he meant to speak in open court. When he invited the government to be heard, he meant ---- and the common understanding of the word is to speak in open court. When the victim, the petitioner in this case, sought an opportunity to speak, he used the very same word and said, I'm not going to hear from any investors. It's the same sense of the word that the Court itself understood to be the meaning of to be heard is to speak. Do you know how many cases we submit without oral argument and yet we consider those cases to have been heard? Of course, Your Honor. But this is a different circumstance. This is a case where Congress has mandated that victims be reasonably heard at sentencing proceedings. And the common, ordinary understanding of that word, indeed, Congress's unambiguous intent directly on this point, is that it include, at least among all other things, speaking. Congress drafted with a broad brush, as Senator Feinstein indicates. They could have said speaking. Pardon me? They could have said, all right, to speak. They could have, Your Honor, but that would be to narrow what they intended to be a broader scope. They intended the victim to be able to be heard in a variety of means. Sometimes it would be speaking, sometimes writing, sometimes a videotape, sometimes in other means of communication. But Congress, there's no question about the fact that the fact that the fact that the Your Honor, if the district judge thought that was reasonable, then the But that's the question. Who decides what is the reasonable thing to do? If we say it's up to the district judge, why can't the district judge say, look, I heard a lot of words spoken that I've received through my ears. And in this case, what I think is reasonable is to look at this piece of paper that the written communication. That would be wrong for three reasons, Your Honor. First of all, it denies the plain meaning of the words that Congress chose. Secondly, it denies the unequivocal intention that Congress applied to those or attached to those words. And thirdly, it would be to ignore the great breadth of history that led up to the Congress's enactment of this law and the evil that was this statute is intended to remedy. I have a question. I want to change the facts of this case in one respect and see what your answer is. Suppose everything happened the same way it did in this case with this distinction. They began the proceeding at 9 o'clock, the sentencing proceeding on the father. And then they continued at 10 o'clock on the very same day with the sentencing proceeding for the son. Do you say that after your client had spoken at the first sentencing hearing, he still had an absolute right an hour later to speak up and say, if necessary, just repeat what he had said at the second hearing? Not only do I say that, Your Honor, but Congress has unequivocally said that. Congress has said that a victim has a right to be heard at any proceeding, public proceeding involving sentencing. The proceeding of defendant, the sentencing of defendant number one. Congress didn't say he had a right to be heard. He said Congress said it had a right reasonably to be heard. Precisely, Your Honor. And the phrase reasonably heard was clearly intended by Congress to be a phrase of expansive and broad application, not one, as the Respondent in this case applied, one of narrow interpretation that indeed, ironically, is used to silence the very record, independent rights to speak before the court. Could the district judge inquire of the speaker who wishes to be heard again, having been heard the day before, or could he say, would you advise me what new material you're going to bring in today that you didn't present yesterday, and then perhaps use what we do in some district courts sometimes say, well, the witness is beginning to cover ground that he's covered before, and it's cumulative, it's tautological, and let's get on with another point. Your Honor, I think that's absolutely the case. In fact, the best parallel is to look at how the courts have interpreted the defendant's right of allocution at the time of sentencing. The courts have not said that the defendant's right of allocution at sentencing is absolute or unlimited. Courts have permitted timeliness restrictions on the ability of a defendant to speak, and they've even imposed some content restrictions, precisely of the kind that Your Honor has just talked about, where something would be repetitive. So clearly, the Congress granted the victims a right to reasonably be heard, reasonably to speak in the same manner that the government and the defendant have the right to speak, which doesn't mean in an unlimited or unrestrained way. And if the victim were to say something that was unduly repetitive or went on too long, the court absolutely has the authority, even as it does with defendants, to limit what is being said. I wanted to ask the government a question. Since there's nobody here on behalf of the district judge, did the government say anything at this hearing on this subject? I think we can stop the clock on Mr. McQuist while we're at it. Why don't you sit down, Mr. McQuist? I didn't want to interrupt your argument, but I did. Oh, I think it's okay. We'll spare you time, and you get a chance to come back. You might, you know, obviously, this is not an ordinary argument. Thank you. And because there are not, you know, absence of opposing parties, we may have you coming back a couple of times. My inference is the court didn't mean that it was an extraordinary argument, but thank you, Your Honor. Well, it's pretty good, I must say. It's the best I've heard all day. Well, my question was, was there any exchange at all between the district judge and the government or the person wanting to speak? If I may, Your Honor, at the first sentencing, the sentencing of Moshe Leichner, the father, 90 days earlier, all the victims were present in the courtroom then that were, I think, were the same victims that were present for Zvi's sentencing. And at that time, we notified the court that these are the victims that are here, and they had a chance to speak at Moshe's. At the sentencing of Zvi, the same defendants were there. And again, if you can picture it, the courtroom was filled with the victims all behind me. And I believe the district court asked if I had any additional argument. I submitted. And at that point, the victims who were behind me all standing up asked to address the court. And that's how it went down in the court. And I believe at that point, the district court said, no, I don't want to hear from you. Well, we've got the government up. I had a couple of questions myself, but please finish your questions, Judge Goodwood. No, I didn't have any other questions. I just wondered if the government participated in any way on this decision by the judge to dispense with the statutory right of the victims to be heard. The government did not have any discussions or argument at that point either for or against the court with regard to that. In that regard, let me ask a little related question. This is an act of Congress, obviously, we're interpreting. Right. And, of course, you represent the president, the executive branch. And as such, you obviously have both a duty to defend the act of Congress. And I would guess the Justice Department would have an interest in how this particular statute, which obviously bears on much of what the Justice Department does, how it winds up being interpreted. And so I am, you know, while not formally a part of this proceeding, you are in a sense a real part in interest, much more so than the district judge, who's the nominal respondent. And I'm wondering, has Justice taken a position on how this act should be construed? I would think that this is the kind of thing that they would have an official view on. To my knowledge, they have not, Your Honor. Our office, the U.S. Attorney's Office here in the Central District, we took a look at this matter. And obviously the government has an interest in victims being present and speaking. Isn't this the kind of thing that's coordinated with the Solicitor General's office? I'm sorry, Your Honor? Isn't this the kind of thing that gets coordinated with the Solicitor General's office? I wouldn't be able to. People here would know a good deal about that. Well, it seemed to me that what might happen is somebody in the criminal division might say, this is an important question. I think we should be heard on this. And if they wanted to file an amicus brief, they could file it on their own, but they'd have to get the Solicitor General's permission if they wanted to seek re-hearing or re-hearing in bank or something like that. So only if they wanted to file something would they need to ask this? But it might also be that within the criminal division, there might be some talk that when this comes up, we should take this position at all times, saying we agree that they have this right or they don't have that right or something like that. But Schreiber was there for a very long time, so he knows whereof he speaks. I wanted to ask you one question, though. When you said the U.S. Attorney's Office took no position with respect to any presentation by the victims, but you were fully heard, as was the defense counsel, on the appropriate sentence, weren't you? That's correct, Your Honor. And I should confess that I read the sentencing transcripts of both of the hearings, and it seemed to me they were fine, full sentencing transcripts in everybody, and the district judge fully understood the contentions of both sides. And the district court also felt, apparently, that the son was, while culpable, should get a lesser sentence because he had fully cooperated with the government, whereas the father had not. That's correct. That's my recollection. I have another question that I wanted to address to both counsel, really, and that is about the procedure. The statute says we must decide it within three days of the sentencing, and that's virtually impossible the way courts of appeal process the now hundreds of thousands of papers that come through our filing system every year. We're handling about 15,000 filings a year now. How do we mechanically get one of these things before a three-judge panel in three days and get a decision? And the statute doesn't appear to be self-executing, so some process has to be. It's really eight days, isn't it? It's three days plus an additional five. You'll get to speak to this, Mr. Twissell. It just happens to be that the government is not. But, I mean, it's still a fairly short time. I agree. And obviously, working for the Federal Government, I understand the bureaucracy and just the paperwork that comes through that. Well, I must say, one of the problems in this case, and, I mean, we take responsibility for the delay in this case. Don't get me wrong about that. I think part of it is our fault. A good part of it is our fault. And, you know, we certainly will work very hard to avoid this in the future, and we are. But part of what happens with appeals from recalcitrant witness appeals, for example, which also are on a very fast track, there is a requirement to put something on the paper saying this is a big emergency to sort of pull it out of the stream for us, and there's no such procedure here. So I guess one of the things we'll have to do is to tell the parties how to tell us that it's one of these cases. I think you and what you're saying is the United States simply has not taken a position on any of this. That's correct, to the best of my knowledge. And if I go back maybe six months, I think there was very few of these cases filed within the Court of Appeals, maybe last summer when this was filed, because I know I talked to our front office about it. They're going to become more common. I agree. And I think it would behoove the United States as a party to every one of these cases to have a position as to, if not, we will simply have to decide things, various things. One of the questions, and while you're standing there, one of the questions I wanted to ask both counsel is we don't have Mr. Leitner is not represented here. And so we have the question. Let's say we agree with Mr. Kenner's argument, you know, he should have been allowed to speak. What can we, should we, may we do at this point? I mean that we have a criminal defendant whose sentence has become final in some sense. There's no judgment was entered some months ago. The government has not appealed. Correct. And Mr. Leitner did not appeal. Correct. So in that sense the sentence became final. And is there, I haven't seen much in the papers here about whether this would violate, whether we can send this back for re-sentencing with allowing Mr. Kenner to speak and whether this would violate Mr. Leitner's double jeopardy rights or anything else. Does the United States take a position on that? Your Honor, I believe if it was remanded strictly for the limited remand for allowing the victim to speak and it wasn't opened beyond that, in just my brief review of the papers. It would not be an adequate remedy because it is not simply the right to speak, assuming we construe it as a right to speak. But whatever the right is, it is a right to be heard at sentencing. It wouldn't do any good for us to say, okay, Mr. Kenner, wherever he is in the courtroom, stand up and speak here. And now you've gotten a chance to speak. I mean, that would clearly not satisfy what the statute calls for. It is only speaking, it seems to me. And maybe I'm wrong about this. Maybe you want to correct me, but it seems to me that whatever the right is, it has to be a right exercised at a time when sentence has not yet been imposed and where the person spoken to has yet to make a decision or a final decision as to the sentencing. So simply sending it back and saying, okay, Judge Walter, we open up the courtroom, turn on the lights, bring everybody into court and let Mr. Kenner speak and then adjourn. I don't think that would do it. Would it? I don't think that would specifically satisfy. So assuming that that is the case, what we have to do in order to give effective relief would be to open up the sentence. And we'd have to do it in a proceeding where Mr. Leichner is not a party. Well, this colloquy suggests to me something else, which I think Judge Kuczynski has hinted at, that perhaps this statute contemplates is a very quick review of the denial of the right to speak before any sentence is imposed. And that seems supported not only by the 72-hour limitation, but by the other provision in the statute that a single judge of the Court of Appeals can issue a writ of mandamus in this circumstance. And that, of course, if that is what it is, this raises a whole question as to whether it's appropriate for there to be a writ of mandamus eight months or so after the sentencing has taken place. I don't have no idea what the answer to any of these questions, but it seems to me a most unusual proceeding. I mean, Congress provided for mandamus, and it obviously wanted to give the victims some rights to challenge actions by the district court. But I don't know what it is, what the right is. Well, I'd have to join Your Honor on that. I mean, it is obviously an issue of first impression, and it brings up unique issues like that. And perhaps Mr. Twist obviously could speak better to the mechanics of the statute and the intent, but perhaps that was the case. You don't have any other answers to this on behalf of the United States, I gather? No, Your Honor. Okay. Why don't we hear from Mr. Twist again? You've heard the various questions. Why don't you start with Judge Friedman's last question, which I think is a very good one. Thank you, Your Honor. Congress has answered the question. Congress says that a petition for writ of mandamus has to be filed within 10 days. The petition in this case was filed within 10 days. Congress says that the court of appeals, acting even through one judge, may act to resolve that petition for writ of mandamus, and that's exactly what should have happened in this case. The eight-month delay to which Your Honor refers. Let me go through the sequence of events just so I'm sure it's clear. Yes, sir. So there was the day that we've all heard described, the day of the sentencing, when Mr. Kenner was not allowed to speak. At that point, Judge Walter pronounced sentence, and that is the triggering day as far as you're concerned. That's correct, Your Honor. Okay. When did the actual judgment of conviction and sentence get entered? Your Honor, I am not certain. Mr. Kramer would know the answer to that question, but I believe it was at that time. But the point, Your Honor, is that. So it was that. It usually takes a day or two for the clerk to actually issue the minute order. In any event, the writ of mandamus was filed within 10 days of May 23rd. Excuse me? The writ of mandamus was filed within 10 days. I wasn't there yet. I was getting to the question of what was happening, the underlying. So do you think the underlying judgment became final or became, was entered before the writ of mandamus was filed or afterwards? I don't know, Your Honor. Well, if it was filed afterwards, would it? But I don't think it matters. Well, tell me why not. Because the United States Supreme Court and the precedents of this Court make clear that defendants simply do not have the same kinds of interest and finality to sentences that they do to judgments of conviction. And the truth is that there are innumerable cases in which sentencings are sent back for a variety of errors in the proceeding itself. For example, in cases where the government was denied the opportunity to speak at sentencing, the case has been remanded for a resentencing or a new sentencing proceeding at which the government would be given an opportunity to speak without any double jeopardy concerns for the defendant. Because as the Supreme Court ---- Those were all cases, weren't they, in which the defendant in the criminal case was a party before this Court. And that's not the case in this mandamus petition. Only through the defendant's own choosing. I mean, the defendant has been copied on all the pleadings. The defendant had an opportunity to file pleadings, papers with this Court. And the defendant chose not to, should not prejudice Mr. Kenna in his petition before the Court, which is grounded in the clear language and unambiguous intent of the Congress. The defendant was in the situation. He realized that your client's interest in the case was increasing his sentence, obviously, as a victim. And so why should he come up here and want to be heard on this? As far as he's concerned, his attitude, I suppose, is the sentencing is over. It's too late, much too late now to try to do something that may result in increasing my sentence. I don't want my sentence increased. Well, he had an opportunity to come before the Court and argue that it shouldn't be reopened, that he chose not to, shouldn't prejudice Mr. Kenna's right under, again, the plain language of Congress's statute and the unambiguous intention that Congress attached to that language. Here what happened was plain error. It was a violation of Mr. Kenna's right to stand up in Court and in the same manner as the defendant, the same manner as the defendant's lawyer, and the same manner as the government's lawyer, speak in open Court and be heard. And the irony in this case is that speaking mattered. Indeed, because of what the defendant and the defendant's counsel said, it changed the outcome of the proceeding. The Court went into Court and clearly announced its intention to impose a sentence of 168 months. And after hearing from the defendant and after hearing from the defendant's counsel, speaking mattered and the outcome was changed and the sentence was reduced to 135 months without giving Mr. Kenna the dignity that Congress has cloaked him with to be able to stand up in Court and address the very matters that the Court found to be persuasive in making its sentencing decision. Well, talk to me a little bit about the mechanics of that. So is the — somebody stands up in the back of the courtroom and says, I am a victim of this crime. Now, I realize, Mr. Kenna, it's not an issue, but how does somebody validate that they're in fact a victim of a crime? Well, Your Honor, the way that this is dealt with in State after State, in court after court, is twofold. First of all, if the person is a count victim, if that person's crime is included in a count, either at a pretrial stage or a post-conviction stage, that person clearly is a victim under all of the various definitions, including the definition that Congress attached to the Crime Victims' Rights Act. If — But how do you know who this is? Somebody stands up in the back of the courtroom and says, I want to speak, I am the victim named in count two. I mean, does the — and then starts talking about things in the real world, you know, divorces, unhappy — Impact of the crime. Impact of the crime and all those things. You know, we don't know whether those things are true, of course. Is there — I mean, this is a witness who testifies — who is essentially testifying as to things. Is a person sworn? The right of allocution, Your Honor, just as exercised by the defendant, is not a right to speak as a witness. The defendant is not sworn when the defendant exercises his right of allocution, nor would a victim be. And certainly I think the district court can impose some reasonable — Well, how can the district court take into account the statements of parties as to whose veracity, as to whose ability to observe, as to whose very identity? There was no fact in the record. I mean, it's just sort of like people writing letters. You know, every district judge gets letters at time of sentencing from, you know, I am defendant's sister, and he's been such a good boy. He was a small child. He used to take care of my turtles and all those things. Well, you know, I don't go back and look and see whether he had turtles. You know, I see there's sort of a letter that, you know, family members saying he's a good guy. Go easy on him. Well, if it made a difference, if it made a difference whether or not what these people are saying — and, again, I'm not talking about people in your case, but often people come in and say good things about a defendant. You know, they write a letter to a judge saying, oh, he's such a great guy, and, you know, he had a blood drive for the neighborhood, and, you know, he did very good. Well, you know, if it's going to make a difference to me how I sentence the guy, I want to make sure that this is not a bunch of lies. I mean, how does a judge know whether or not — Your Honor, what I would submit is that the judge does it in the very same way that the judge accepts the defendant's own statement at allocution or others submitted on the defendant's behalf. And this is what — We assume that the defendant lies. Your Honor, if I could just continue my answer. We assume that the defendant lies to benefit himself, of course. What's he going to say at allocution? He tells us, you know, we don't take it too seriously. The U.S. Supreme Court has addressed this point in Payne v. Tennessee. The U.S. Supreme Court has said just as the defendant is entitled to individualized treatment, and part of that is in the defendant's own exercise of the right of allocution, so is the victim entitled to be treated as an individual with the individualized harm as articulated at the point of allocution, among other things. And that's the precedent of the U.S. Supreme Court in Payne v. Tennessee, that this value of individualizing the understanding of the position of the defendant is just as applicable to the circumstances of the victim. And indeed, Congress has enshrined this now in not just a statute that allows the court to do that, but in a statute that demands that the court allow the victim to do this. What does the court do? Somebody stands up and says, look, I tell you all these great counts are following me, and the defendant says, or the first counsel says, that guy's crazy. It's just simply not true. He's making up facts. And, in fact, I would like a chance to cross-examine him. And, in fact, I'm going to, you know, if I get a chance to cross-examine him, I will prove that he was in Munich the day he claims he was in Los Angeles being defrauded. I've got witnesses, and I've got photographs of him being somewhere, you know, let's say, right? So we have this whole mini-trial about whether or not the – I mean, either stuff is true and makes a difference, or it is just a chance for people to flab their lips, and the district judge basically says, well, you know, I'm not going to take it too seriously. I mean, which is it? All I can say, Your Honor, is what you just said, and that is that's not this case. That's not the situation that Mr. Kenna has – finds himself in. If, indeed, at some point down the future, the court is confronted with that particular case, the court will be able to fashion the appropriate principle. But in this case, Mr. Kenna had a clear right to speak. It was clearly denied, and the denial was plain error. What are these – in the record we have some of these apparent victim impact statements, or whatever you call them. How do those – what are those? Is that a form they have? And if you are a – if you are a victim and you want to be heard, do you have to file one of those first? It is a form, Your Honor, and it was filed in this case. The district court – the respondent – Do you have to file it before you can be heard? No, Your Honor. There is no requirement in the statute, and Congress didn't intend that there be any such formal filing of a victim impact statement before a victim could exercise his right. There might be a court rule saying that. There might in the future be a court rule. But at this point, there is a court rule in the form of a statute, and that statute takes precedence over any court rule to the contrary. And the statute is very clear. It commands that Mr. Kenna be given a right to speak in the same manner that the defendant was given a right to speak. And that's the unambiguous intention of Congress, clearly expressed by the prime sponsors of the legislation, and the – and the quotes are before the court. Could I ask another question about the remedy? Thank you. Do we vacate a sentence and remand? Assuming that you're right, which I'm not assuming right now because we haven't decided the case yet, but if you are right, what is – what is the remedy? Congress and the precedents of this court have provided the remedy, Your Honor. Congress, first of all, contemplated expressly in this statute that sentencing proceedings would be reopened. Instead of talking about Congress, what is specifically the remedy? Suppose we were to agree with you 100 percent. How do we dispose of this petition for mandatement? Thank you, Your Honor. You remand the case and direct that the Respondent hold another sentencing proceeding at which the victims are given their statutory right to be heard. A full new sentencing proceeding? Absolutely. And – and – Including complete allocution for the defendants? Absolutely, Your Honor. And – and that is perfectly consistent with the precedents of – of this court when it comes to circumstances where defendants have been not allowed to exercise their right to speak. Indeed, in the Navarro-Flores case, this Court says trial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant. And it – and it went on to talk about this statement. The district court – this is a – on remand for the resentencing in a defendant's petition. The district court has a duty to listen and give careful and serious consideration to such information that's presented. The same thing is true for the victim. When the victim's right to speak is not honored, the case needs to be remanded. A new sentencing proceeding needs to be held, just as in the case of Navarro-Flores. And the court at that resentencing has a duty to listen to the victim and make its decision as to the sentence after hearing from both sides. Now, the criminal rules actually, when they talk about the defendants, might actually say speak. Use the word speak. What do you make of the fact that Congress, when it used – when it enacted the statute, didn't – chose not to use that word? In fact, what I make of that is what Congress intended, Your Honor, and that is that the words reasonably heard are intended by Congress to be broader than simply just speak. They're intended to include other reasonable means of communication. Senator Kyle, in his statement on the floor of the Senate, expressly addressed your question and said it is the intention that use of the word reasonably is to allow other means at the option of the victim to personally address the court or to personally to communicate with the court. The exact quotation, if I may, Your Honor, from Senator Kyle's statement is, this provision is intended to allow crime victims to directly address the court in person. That's a quote verbatim from the congressional record. And the Senator goes on – I don't hear the word speak in there. Pardon me? I don't hear the word speak. Well, Your Honor, if you – Walking in and – or pretending in a letter as addressing the court in person. To directly address the court in person. And then the statement goes on, Your Honor, and it says, it is not the intent of the term reasonably in the phrase to be reasonably heard to provide any excuse for denying the victim a right to appear in person and directly address the court. Indeed, the very purpose of this section is to allow the victim to appear personally and directly address the court. This section would fail in its intent if courts determined that written rather than oral communication could generally satisfy this right. On the other hand, the term reasonably is meant to allow for alternative means of communication – of communicating a victim's view to the court when the victim is unable to attend the proceedings. It is beyond doubt, Your Honor, that Congress intended the words reasonably to be heard to be words of expansive interpretation, broad interpretation, not a narrow, ironic interpretation that's been given to it by the respondent, which takes a statute that was intended to empower victims with the independent right to speak at court into a statute that limits their right to communicate with the court. That turns Congress's intention on its head and denies the very remedy to victims that Congress created. This remedy has a long history that began in 1982 with the President's Task Force on Victims of Crime. And in that report, in the 1982 report, the President's Task Force talked about how important it is to give victims the right to speak even as the defendant has that right to speak in open court. And that followed through. That policy followed through the Congress's consideration over the last several years of the right to be heard. And in every context where it's used in the proposed constitutional amendment that Congress has considered, in this statute that was enacted as a substitute. You mean rejected? Well, I wouldn't say rejected yet, Your Honor. I'd say that the statute is a substitute for it. Two of everything, you know. Nothing has happened that has — everything that hasn't happened hasn't happened yet. Well, as a matter of logic, Your Honor is right. But the record of that consideration, that Congress's consideration of the constitutional amendment is relevant to interpret this statute. Give me back the answer you gave to Judge Goodwin. It simply would not be enough in this case for us to order the case, order the district court to hear. We'd have to vacate the sentence. District court has no authority to vacate the sentence. Your Honor is exactly right. And that's exactly the remedy. District court can't do it. So as part of the relief, in order to give any sort of effective relief, we would have to vacate the sentence. Now, do we have authority to vacate the sentence?  You've done it, Your Honor, when prosecutors have not been heard at sentencing, and you've done it when defendants haven't been heard at sentencing. And now there's a new rule. Please be serious and listen to the question. Obviously, if a case is taken on an appeal, the judgment is not final, and the court of appeals can do things to that judgment. So listen to the question carefully, because, you know, I'm not asking a trivial question. I understand about appeals. You know, I know something about them. I've seen them done. The question is, given the finality of the sentence, given that that judgment is final, the district court has no authority. I mean, let's say tomorrow morning Judge Walter wakes up and says, you know, I just – I should have sentenced Mr. Leithner differently. I have remorse. I'm not saying whether he should sentence him more or less. He can't go to the court and write an order opening up the sentence and saying, now I'm going to impose a difference. I'm going to run a new sentencing proceeding. So we'd have to do it for him. We have to somehow have the authority to take that judgment of conviction and sentence, not appealed, and open it up. And I'm wondering where you think we have the authority to do that. 18 U.S.C. 3771, Your Honor. What does 3771 say that gives us an authority? I think if Your Honor turns to the express provisions of subsection D, paragraph 3, it says, if the district court denies the relief sought, the movement may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the federal rules of appellate procedure. The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed. So the authority for the court of appeals to take up. I'm sorry. Where in this language that you just read me does it speak to a case where the judgment of conviction has become final? Where the time for appeal has, I mean, the judgment of conviction and sentence has been entered? It doesn't speak to that at all. And doesn't speak to, doesn't speak to, I mean, you could always get a stay, ask the district court to stay in position of the sentence, or you could ask the court of appeals to stay in position of the sentence. I mean, that's one possibility. But here we have a situation where it was a stay, where the judgment was entered, and as best I can tell, both the government, I mean, let's say the government now decides to appeal, it's too late. Or let's say Mr. Leichner decides to appeal, it's too late for him. So the sentence in some sense has become final, much more final than would have been right on the day when it was entered. But, Your Honor, not in a sense that would deny the defendant any double jeopardy right if the court were to remand and order that the proceeding be reopened for sentencing. I asked you the double jeopardy question earlier. This is a different question. This is a question of authority. This is a question, I mean, it may not be a violation of double jeopardy rights. We still have to have the power to do that which you ask us to do, which is to open up a final sentence. And I'm wondering where do we get that authority? Again, Your Honor, I think you get it from 18 U.S.C. 3771. It would be straining the statute to break. Just a minute. Yes, sir. You have to say, it seems to me, that somehow our authority to issue a writ of mandamus in this situation carries with it the inherent authority to vacate what is a final sentence. And that's clearly what Congress intended in paragraph 5, the very next paragraph. Before you get into it, isn't that your basic, doesn't that have to be your basic position, that sure, the judgment is final, but Congress has said you can review the finality of that judgment, and if you decide there's been a denial of the right of a victim to speak, your authority to issue a writ of mandamus necessarily carries with it the right to vacate the sentence and to send the case back for there to be a whole new resentencing procedure. Your Honor, you're exactly right. And not only would I say it necessarily carries. I'm saying that that's my position. I'm suggesting that's the position you have to take. But I take that position also because in paragraph 5 of the statute, this is exactly what Congress contemplated. Congress wrote that the sentence can be reopened. If two conditions are met, the victim has asserted the right to speak, in this case, before or during the proceeding at issue. Clearly that happened here. And second, the victim petitions the court of appeals for a writ of mandamus within ten days. Well, that's exactly what happened here. Both those conditions are met. Does it say explicitly the sentence can be reopened? Well, it says a victim may make a motion to reopen a sentence only if the victim has asserted the right to be heard before or during the proceeding and the victim petitions the court of appeals for a writ of mandamus. It could mean nothing else, Your Honor, than this Court ---- That sounds as though that motion is to be filed in the district court. No, because it says the victim and the victim petitions the court for a writ of mandamus  What else? It sounds as though ---- So what you're saying is that we can mandamus the district court to hear Mr. Kenna, and then you go back to the district court, and under Section 5, you'd have authority, he'd have authority to petition to make a final motion to reopen the sentence. Absolutely, Your Honor. So this is new authority given to the district court. I mean, it doesn't say when the motion has to be filed. It could be after the mandamus or before. But that's exactly the remedy that Congress has contemplated. And that's why ---- and it was precisely because Congress wanted to do everything it could to address the issue of finality that these time limits are relatively short. But that's to protect the victim's right. It's to protect the defendant's right, the interest of the government in the case. And that's why the need for dispatch has been written into the statute. Okay. Thank you. Unless my colleagues have further questions. Thank you very much, Your Honor. Thank you. Did you have anything else on behalf of the government, Mr. Kramer? No, Your Honor. Thank you. Okay. Thank you, counsel. Our cast just argued.
judges: Goodwin, Friedman, Kozinski